UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,   Case No. 08-20483

       Plaintiff,   HONORABLE SEAN F. COX
                                    United States District Judge

v.

JAMES JUNIOR FRAZIER,

       Defendants.
_____/

OPINION & ORDER

Defendant James Junior Frazier ("Frazier") is charged with possession with intent to distribute cocaine base, felon in possession of a firearm, and using a firearm in furtherance of a drug trafficking crime. The matter is currently before the Court on Defendant's Motion to Suppress Evidence [Doc. No. 14]. The parties have fully briefed the issues and a hearing was held on Friday, January 9, 2009. For the following reasons, Defendant's Motion to Suppress Evidence is **DENIED**.

I.  BACKGROUND

On January 12, 2008, at approximately 10:00 pm, Flint police officers Nathan Guigear ("Guigear") and William Surface ("Surface") were on routine patrol in the area of Third Avenue and Stone Street, an area the officers knew from their experience had a high concentration of drug activity. From their patrol car, the officers observed Rondell Braxton, a locally known drug addict, interacting with a man later identified as Frazier, as Frazier straddled a bicycle. The

1

officers observed Braxton and Frazier engage in what they called a "hand-to-hand," in which Braxton extended his arm at an awkward angle to take something from Frazier's hand. The officers thought this activity, given their experience, training and prior knowledge of the area, was consistent with a drug transaction.[1] After the exchange took place, the officers observed Frazier immediately turn and look in the direction of their patrol car, abruptly stop what he was doing, and part ways with Braxton. Frazier immediately got on his bicycle and pedaled westbound on Third Avenue, away from Braxton and the officers. Knowing Braxton was a drug addict, Guigear and Surface were suspicious that they may have witnessed Frazier selling drugs to Braxton, and decided to stop Frazier for questioning.

The officers noticed that Frazier's bicycle was not equipped with a lamp, which they believed was required for bicycles traveling on roadways at night. Based upon their suspicion of a drug transaction, and the civil infraction for the bicycle being ridden without a lamp at night, the officers activated their overhead lights and instructed Frazier to stop. Rather than stopping, Frazier turned north through the yard of 604 Third Avenue, abandoned his bicycle, and fled northbound on Stone Street on foot. Guigear exited the patrol car and gave chase, catching up with Frazier at 611 Stone Street.

As Guigear forced Frazier to the ground, he observed a black handgun fall from Frazier. Frazier was arrested, and the search incident to arrest revealed nine baggies of crack cocaine as

---

[1] In his Supplemental Brief, Frazier argues that the testimony showed two individuals "extend[ing] a hand to each other" consistent with a handshake. [Doc. No. 19, p.3]. The Court notes that the testimony of Guigear and Surface highlighted *the way* those individuals touched hands as being suggestive of drug activity. One man was ahead of the other, and reached back with his left hand to touch the right hand of the other individual at an awkward angle, which would be inconsistent with a handshake. The Court fully credits the testimony of Guigear and Surface that, given their training and experience with narcotics activities, such conduct was consistent in their minds with a drug transaction.

well as the 0.380 semi-automatic handgun that fell from Frazier during the chase.

Frazier argues in his Motion to Suppress [Doc. No. 14] that, as Guigear and Surface only saw him riding his bicycle on the sidewalk and not a roadway, there was no probable cause to issue a civil infraction under M.C.L. § 257.662. [Doc. 14, p.5]. The Government argues that, though Guigear and Surface did not see Frazier cross Stone Street, inductively he must have done so, in violation of § 257.662. [Gov.'s Br., Doc. No. 16, p.6] Moreover, due to their observation of a suspected drug transaction, the Government argues that Guigear and Surface had reasonable suspicion to engage in an investigatory stop of Frazier separate and distinct from the civil infraction. *Id*. at 5.

## II.  STANDARD OF REVIEW

"[I]n seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir.2003). To justify an investigatory stop of an individual, the Government must show that, under the totality of the circumstances, the police had reasonable suspicion that criminal activity may be occurring. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

## III.  ANALYSIS

For the reasons below, the Court finds that, under the totality of the circumstances, Guigear and Surface had reasonable suspicion to engage in an investigatory stop of Frazier. Therefore, the Court does not reach the Defendant's alternate argument regarding the civil

infraction, and the Defendant's Motion to Suppress is **DENIED**.

The Fourth Amendment permits an officer to make a brief investigatory stop of an individual if the officer bases his action on a "reasonable suspicion" that criminal activity may be occurring. *See United States v. Arvizu*, 534 U.S. 266 (2002); *Terry v. Ohio*, 392 U.S. 1 (1968). Courts must look "at the totality of the circumstances" in each case to determine whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *Arvizu* at 273. Courts "allow officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Id*.

Applying the "totality of the circumstances" approach of *Arvizu* to this case, Officers Guigear and Surface were allowed to use their prior knowledge that the area around Third Avenue and Stone Street had a reputation for drug-related activity. The Supreme Court in *Illinois v. Wardlow*, 528 U.S. 119 (2000), found that while not enough in itself to find reasonable suspicion, "the fact that the stop occurred in a high crime area [is] among the relevant contextual considerations in a *Terry* analysis." *Wardlow* at 124, *citing Adams v. Williams*, 407 U.S. 143, 144 (1972).

The facts of the instant case are similar to *United States v. Paulette*, 457 F.3d 601 (6th Cir.2006). In *Paulette*, the Sixth Circuit held that the following circumstances observed by the officers warranted an investigatory stop due to reasonable suspicion of a drug transaction:

> On November 1, 2002, two Memphis police officers observed Paulette and another individual engage in a hand-to-hand transaction. The officers, based on their knowledge of the area and experience with drug crimes, believed the transaction to be related to drugs. When Paulette noticed the officers approaching in their marked squad car, he quickly moved his hand to his pocket and began to

>walk away from the officers. The officers pursued Paulette and eventually detained him. Believing that Paulette had a weapon, they conducted a pat down search and discovered two plastic bags of marijuana on his person.

*Paulette* at 602. The Sixth Circuit held that, "[v]iewing the totality of the circumstances, the officers had reasonable suspicion that Paulette was engaged in criminal activity based upon his hand movements consistent with drug dealing activity, efforts to evade the police upon noticing them, and presence in a high crime area." *Id*. at 606.

Just as in *Paulette*, Frazier was present in an area known for drug activity, and was seen engaging in hand movements consistent with a drug transaction. Frazier also stopped what he was doing when he turned to acknowledge the presence of Guigear and Surface, and then abruptly left the scene.

The Sixth Circuit held in *United States v. McCauley*, 548 F.3d 440, 443 (6th Cir.2008) (emphasis in original), that "[w]e determine whether reasonable suspicion existed at the point of seizure - not...at the point of *attempted* seizure." Thus, Frazier's reluctance to stop when instructed to do so by Guigear and Surface is relevant to the reasonable suspicion inquiry, and makes it even more likely reasonable suspicion existed for Guigear and Surface to detain Frazier.

Under these facts and in light of *Paulette* and *McCauley*, the Court holds that, under the totality of the circumstances, Officers Guigear and Surface had reasonable suspicion to engage in an investigatory stop of Frazier. Therefore, the Defendant's Motion to Suppress is **DENIED**.

IV. CONCLUSION

For the reasons explained above, the Court **DENIES** Defendant's Motion to Suppress Evidence [Doc. No. 14].

**IT IS SO ORDERED**.

          S/Sean F. Cox
          Sean F. Cox
          United States District Judge

Dated: January 26, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 26, 2009, by electronic and/or ordinary mail.

          S/Jennifer Hernandez
          Case Manager